**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

Case 12-36601-ABA Claim 4-1 Filed 12/13/12 Desc Main Document Page 1 of 3

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT ________ DISTRICT OF New Jersey | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: RICKEY COLEMON | Case Number: 12-36601 | |
| NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.* | | |
| Name of Creditor (the person or other entity to whom the debtor owes money or property): PNC Bank | | COURT USE ONLY |
| Name and address where notices should be sent: PNC Bank PO Box 94982 Cleveland, OH 44101 Telephone number: 1-866-622-2657 EXT 44177 email: | | ❒ Check this box if this claim amends a previously filed claim. Court Claim Number:________ (*If known*) Filed on:________ |
| Name and address where payment should be sent (if different from above): Telephone number: email: | | ❒ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ 12,219.05

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** MONEY LOANED
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|---|
| [redacted] | ________ (See instruction #3a) | ________ (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❒Real Estate ❒Motor Vehicle ❒Other
**Describe:**

**Value of Property: $**________

**Annual Interest Rate**______% ❒Fixed or ❒Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

**$**________

**Basis for perfection:** ________

**Amount of Secured Claim:** **$**________

**Amount Unsecured:** **$**________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❒ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❒ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❒ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❒ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Judy Borkey
Title: Bankruptcy Specialist
Company: PNC Bank
Address and telephone number (if different from notice address above):

/s/ Judy Borkey 12/13/2012
(Signature) (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As**:
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

PNC BANK

**PNC Bank**
**P5-PCLC-A1-N**
**2730 Liberty Avenue**
**Pittsburgh, PA 15222**

**Rickey Colemon**
**2525 43Rd St**
**Pennsauken, NJ 08110**

**Date:** **February 15, 2012**
**Account Number:**
**2005 Cadillac Deville 1G6KE57Y15U182040** ("Collateral")

**EXPLANATION OF CALCULATION OF SURPLUS OR DEFICIENCY**

**The Collateral was sold as described in the notice of sale previously sent to you. An explanation of how the proceeds of the sale were distributed is set forth below:**

- The aggregate amount of the obligation(s) secured by the security interest under which the sale was made as of the date of this letter is $20,981.50
- The proceeds from the sale were $8,700.00
- After deducting the proceeds from the sale, the aggregate amount of the obligation(s) is $12,281.50
- Our total expenses associated with the sale are itemized as follows: $525.00

| | |
|---|---|
| 1. Expenses of retaking the Collateral: | $350.00 |
| 2. Expenses of storing the Collateral: | $0.00 |
| 3. Expenses of reconditioning the Collateral: | $75.00 |
| 4. Expenses of advertising the sale: | $0.00 |
| 5. Auctioneer/Broker fee: | $15.00 |
| 6. Other: "Additional Fees" | $85.00 |
| 7. Other: | |

- The total amount of any other credits rebated to you (including insurance premium refunds) are 0

**THE SALE RESULTED IN**

A deficiency in the amount of $12,281.50, and you are liable for the deficiency amount in accordance with the terms of your contract. No later than 10 days from the date of this letter, you must either forward the deficiency amount to PNC Bank at the following address: PNC Bank P O BOX 5570 CLEVELAND , OH 44101 , or contact us at the number below to discuss acceptable arrangements for the repayment of this balance. If we have not heard from you within that time, we will take whatever actions we deem advisable to protect our interests.

Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the deficiency or surplus amount set forth above.

**If you have any questions or would like further information about your account, including information regarding the calculation of the surplus or deficiency noted above, contact us at 1-800-878-0027.**

**Notice: See Reverse Side for Important Information**

Case 12-36601-ABA Claim 4-1 Part 2 Filed 12/13/12 Desc Exhibit Page 2 of 2

The separate laws of Connecticut, the District of Columbia, New York City, North Carolina and Vermont each require that their respective residents be furnished with this notice:

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

This paragraph is a special notice to our customers who have filed a petition for protection under the United States Bankruptcy Code. Unless you have signed a reaffirmation agreement with PNC Bank, and that agreement has been filed with the bankruptcy court (and not subsequently rescinded or disallowed in accordance with the Bankruptcy Code), you should disregard all portions of this letter which state or suggest that you still have a personal liability to pay PNC Bank. You may wish to consult with an attorney regarding this letter, your bankruptcy and the ability of PNC Bank to enforce its lien on the collateral. If you have obtained a discharge under the Bankruptcy Code this letter is for informational purposes or to protect our interests in the collateral.

Case 12-26601-ABA Claim 4 Filed 12/13/12 Desc Exhibit Page 1 of 2

Contract No. ______ Date of Contract ______

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The cost of your purchase on credit, including your downpayment of $ 0.00 |
|---|---|---|---|---|
| 9.16 % | $ 10211.60 | $ 31572.40 | $ 41784.00 | $ 41784.00 |

Your Payment Schedule will be: e means estimate

| No. of Payments | Amt. of Payments | When Payments Are Due |
|---|---|---|
| 75 | $ 557.12 | Monthly, beginning 12/01/2008 |
| | $ N/A | |

**Security:** You are giving a security interest in the goods or property being purchased.
**Filing Fees:** $ N/A
**Late Charge:** If a payment is more than 10 days late, you will be charged $10.00.
**Prepayment:** If you pay off early, you will not have to pay a penalty.

See below and your other contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, our security interests and prepayment refunds and penalties.

This Contract is between you and the Seller. All disclosures have been made by the Seller, who intends to assign (transfer) this Contract to the "Assignee" named below. If more than one person signs as Buyer below, each will be bound, separately and together, for the payment of all sums due and the performance of all your promises in this Contract. The terms in the above box are part of this Contract.

You are the Buyer(s) RICKEY COLEMON 2525 43RD ST PENNSAUKEN NJ 08110
Name(s) Address Zip Code

We are the Seller(s) F.C. KERBECK & SONS 100 RT. 73 NORTH PALMYRA NJ 08065
Name(s) Business Address Zip Code

Under this Contract, you agree to buy the following property, including its accessories, all of which is called the "Goods."

| YEAR | MAKE | BODY STYLE | SERIAL NUMBER | MODEL |
|---|---|---|---|---|
| 2005 | CADILLAC | 4 DOOR SEDAN | 1G6KE57Y15U182040 | DEVILLE |

ACCESSORIES: ______

TRADE-IN: Your trade-in is described as follows:

2004 CADILLAC CTS 1G6DM577240189118

**PAYMENT SCHEDULE:** You agree to pay us the Total Sale Price for the Goods. You will do this by making the Cash Downpayment and assigning the trade-in, if shown above, on or before the Date of Contract, and paying us the Amount Financed, plus Finance Charges, in the number and amount of monthly payments as provided in this Contract. Payments must begin on the date indicated in the Payment Schedule and are due on the same day of each following month until we receive payment in full. You may pay all or part of the Amount Financed in advance without penalty or premium. Payments must be made at any office of:

PNC BANK, NATIONAL ASSOCIATION (the "Assignee")

**PROPERTY INSURANCE:** You will keep the Goods insured against fire, theft, collision and other risks. You can obtain such insurance from any insurer of your choice who is acceptable to us. However, if one of the boxes below is checked, you have decided to obtain the insurance from us.

[ ] Collision insurance for a term of N/A months. The cost of it is $ N/A. The limit of coverage is $ N/A, less a deductible of $ N/A.
[ ] Comprehensive insurance for a term of N/A months. The cost of it is $ N/A. The limit of coverage is $ N/A, less a deductible of $ N/A. [ ] Other (describe)

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price | $ 21990.00 |
| Cash Downpayment | $ N/A |
| Trade-in | |
| Value of trade-in | $ 17500.00 |
| Lien payoff to PNC BANK N.A. | $ 23247.60 |
| Unpaid Cash Balance | $ 27737.60 |
| Amount Paid to Others on Your Behalf (To the extent permitted by applicable law, we may be retaining a portion of these amounts) | |
| To Credit Insurance Company | $ N/A |
| To Property Insurance Company | $ N/A |
| To Sales Tax | $ 482.30 |
| To Public Officials | $ 63.50 |
| To DOC FEE | $ 139.00 |
| To SERVICE CONT/GAP | $ 3150.00 |
| Amount Financed | $ 31572.40 |

THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS. (See INSURANCE on the reverse side.)

**CREDIT INSURANCE IS NOT REQUIRED:** Credit insurance is available through us for the term of this Contract at the cost(s) shown below. Single Credit Life and Single Credit Accident and Health Insurance are available to any one Buyer signing for insurance below. No credit insurance will be provided unless the appropriate statement(s) is signed by the Buyer(s) to be insured and the cost(s) shown below are included in the Amount Financed. See the CERTIFICATE OF INSURANCE or the NOTICE OF PROPOSED INSURANCE given to you on a separate document.

By signing, you want Single Credit Life Insurance, which costs $ N/A
Signature of Buyer to be insured for Single Credit Life Insurance
What is your age? ______ Years

By signing, you want Single Credit Accident & Health Insurance, which costs $ N/A
Signature of Buyer to be insured for Single Credit Accident & Health Insurance
What is your age? ______ Years

By signing, you both want Joint Credit Life Insurance, which costs $ N/A What are your ages?
1. ______ Years
2. ______ Years
Signatures of both Buyers to be insured for Joint Credit Life Insurance

**SECURITY AGREEMENT:** To secure the payment of all sums owed to us and the performance of all your promises in this Contract, you grant us a lien and security interest in the Goods and in any parts called "accessions," which are attached to the Goods at any later time, and in all proceeds of the Goods.

**ADDITIONAL TERMS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE BOUND TO ALL THE TERMS OF THIS CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**USE:** You will use the goods primarily for personal, family or household purposes. You will maintain the Goods in good condition and will protect them against loss, damage and destruction. You will principally keep the Goods at your address shown above or at the following address:

**NOTICE TO RETAIL BUYER(S): DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT AT THE TIME YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. BUYER(S) ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

F.C. KERBECK & SONS
Seller (Corporate or Firm Name)
X [signature] (SEAL)
Signature of Authorized Representative of Seller

X [signature] (SEAL) 10/13/2008
Signature of Buyer Date
X ______ (SEAL) ______
Signature of Buyer Date

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

*CO-SIGNER'S AGREEMENT:* You, the person (or persons) signing below as "Co-Signer," promise to pay to us, or to our order, the Amount Financed, plus Finance Charges and other charges, as provided in this Contract with the Buyer. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though the proceeds will be used only for the Buyer's benefit. You agree that we may seek immediate payment from you without making any prior demand for payment on the Buyer. You also acknowledge receiving a completed copy of this Contract.

X ______ (SEAL) ______ ______
Co-Signer's Signature Address Date
X ______ (SEAL) ______ ______
Co-Signer's Signature Address Date

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Goods, give us a Security Interest in the Goods identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the promise to pay contained in the Payment Schedule section. You are giving us the security interest to induce us to make this contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any balance which might be due after repossession, sale of the Goods and application of the sale proceeds to the debt.

______ (SEAL) ______ ______
Co-Owner's Signature Address Date

**ASSIGNMENT:** The Seller assigns this Contract to the Assignee in accordance with the terms stated on the reverse side. The assignment is [X] without recourse; [ ] with full recourse; [ ] with repurchase. If no box is checked, this is without recourse.

Seller F.C. KERBECK & SONS By X [signature] (SEAL) Title [signature] Date 10/13/2008

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

FORM 538995-0204

ORIGINAL

LMH

ADDITIONAL TERMS

1. HOW WE FIGURE THE FINANCE CHARGE: The Finance Charge (Time Price Differential) consists only of interest at the Annual Percentage Rate shown on the front, which is imposed each day on the outstanding balance of the Amount Financed. The Finance Charge shown on the front was figured by assuming that all your payments were made as scheduled. If any payment is late, you must pay more Finance Charge than is shown because of the additional interest imposed. If you pay early, the Finance Charge will be less. The amount of the increase or decrease in interest will be due with your last payment, which will be modified as necessary to reflect the actual amount then due.

2. LATE CHARGE: If we do not receive any payment within 10 days of its due date, you agree to pay a Late Charge of $10.00. The Late Charge will be due as soon as it is charged. We will not charge you a Late Charge if the reason that the payment is late is because: (a) after default we demanded that you pay the entire outstanding balance; or (b) we collected a Late Charge for an earlier payment.

3. RETURNED CHECK CHARGE: If any check, draft or other item you send in payment of your obligation on this Contract is returned unpaid for insufficient funds, you agree to pay us a Returned Check Charge of $20.00.

4. YOUR PROMISES:

(i) OUR SECURITY INTEREST. You will not permit anyone other than us to obtain a security interest or other rights in the Goods. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Goods. If a certificate of title is required on the Goods, you will have our security interest noted on the certificate of title. You agree to cooperate with us and to sign any and all documents, applications or certifications as we may reasonably request which we deem necessary to perfect and protect our security interest and/or to transfer it to an Assignee.

(ii) PRESERVING THE GOODS. You will keep the Goods in good condition and repair. You will pay taxes and charges on the Goods. You will pay all costs of maintaining the Goods. You will not abuse the Goods or permit anything to be done to the Goods which will lessen their value, other than for normal wear and use. You will not use the Goods for illegal purposes or for hire. You will not move the Goods to a new permanent place without our written consent. You will not sell the Goods or give them to any other person. You will permit us to inspect the Goods at all reasonable times.

(iii) INSURANCE. You will keep the Goods insured against fire, theft and other hazards customarily insured against for goods of that kind until all sums owed to us are paid in full, and will provide to us, on request, evidence that the required insurance is in force. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must be written by an insurance company licensed to do business in the state where the Goods are permanently kept or garaged. The insurance policy must provide us with at least 10 days notice of any cancellation or reduction in coverage for any reason. You agree to promptly notify us of any loss or damage to the Goods and to promptly file a proof of loss with the insurance company. If you do not file a proof of loss, we may do so on your behalf. Insurance proceeds will be applied by us to repair or replace the Goods, but only if we believe this is economically feasible. Otherwise, they will be applied to reduce the unpaid balance due us.

5. RISK OF LOSS: Loss, damage or destruction of the Goods will not release you from your promises in this Contract.

6. FURTHER ADVANCES SECURED: If you fail to pay filing fees, taxes, or amounts necessary to keep the Goods in good condition and repair, we may, if we choose, advance the sums necessary to protect our interest. If you fail to keep in force the required insurance and/or fail to provide evidence of such insurance to us, we may notify you that you should purchase the required insurance at your expense. If you fail to purchase the insurance within the time stated in the notice and/or fail to provide evidence of such insurance to us, we may purchase coverage under a Lender's Collateral Protection Policy to protect our interest in the balance due under this Contract, to the extent permitted by applicable law, and charge you the cost of the premiums and any other amounts we incur in purchasing the insurance. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF. If permitted by applicable law, any sums we advance on your behalf may be added to the balance on which we impose interest as provided in this Contract. If we advance any amounts on your behalf, it will not cure your default. Such sums as we advance will be payable by you, as we alone may direct, as follows:

(i) immediately on demand;

(ii) along with your monthly payment and your monthly payment will be increased accordingly;

(iii) at the end of the Contract term; or

(iv) as provided for in a separate note or other credit instrument.

The rights stated in this paragraph are in addition to our rights stated in other paragraphs for your failure to keep your promises to us.

We may receive reasonable compensation for the services which we provide in obtaining any required insurance on your behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with us. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks.

7. YOUR TRADE-IN: You promise that you have full title and the power to sell any property that you have given us as a trade-in in connection with this Contract. You promise that there are no claims or security interests outstanding against the trade-in, except as shown in the Itemization of the Amount Financed on the front of this Contract.

8. DEFAULT: You will be in default on this Contract if any of the following occurs:

(i) You fail to make any payment on or before the day it comes due;

(ii) You fail to perform any other of your promises in this Contract;

(iii) You provide us with false information or signatures at any time;

(iv) Any of you dies, is declared legally incompetent, or is convicted of a crime involving fraud or dishonesty;

(v) You sell, transfer or deliver the Goods to another person without our consent;

(vi) You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you;

(vii) You use the Goods or allow someone else to use it in a way that causes it not to be covered by your insurance;

(viii) You do something that causes the Goods to be subject to confiscation by government authorities;

(ix) The Goods are lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or

(x) Another creditor tries to take the Goods by legal process.

9. OUR RIGHTS ON DEFAULT: In addition to any rights we may have under law, upon any default, our rights include:

(i) ACCELERATION. The right to declare all sums then owing on this Contract, including earned interest, to be due and payable immediately.

(ii) SURRENDER OF GOODS. The right to require you to deliver the Goods to us at a place which is reasonably convenient to you and to us.

(iii) REPOSSESSION OF GOODS. The right to obtain possession of the Goods, with or without process of law, if you do not deliver them to us. You authorize us to peaceably enter any premises where the Goods may be in order to take possession of the Goods and remove them. You authorize us to use your license plates in removing the Goods to a place of storage. We may take any other things found in the goods, but will return these things to you if you ask. If you want these things back, you agree to ask us in a letter sent to us by first class U.S. mail within a reasonable time.

(iv) OUR COSTS. The right to require you to pay our actual, necessary and reasonable costs of retaking and storing the Goods which are authorized by law. If we begin an action to collect what you owe and refer this Contract to an attorney who is not our salaried employee, you will also pay our court costs and reasonable attorney's fee not to exceed 20% of the first $500.00 of the amount due and 10% of any excess amount due.

(v) SALE OF THE GOODS. The right, as provided by law, (a) to sell the Goods at a public or private sale, or (b) to propose to keep the Goods in full satisfaction of your obligations under this Contract. In the event of sale, we will give you at least 10 days reasonable notice of the time and, if a public sale, also of the place of sale. We will apply the sale proceeds first to our costs. The balance of the proceeds will then be applied to Late Charges, and then to the balance due us. If there is a surplus, we will pay it to you. If there is still an amount due us, you must immediately pay it to us, with interest which, if permitted by law, will continue to be imposed at the rate provided in this Contract until we are paid in full.

10. APPLICATION OF PAYMENTS: We will apply payments in the following order: interest, late charges, fees and then principal. You agree that we may change this order at any time without notice to you, if the change in order is not less favorable to you.

11. PREPAYMENT: You may prepay, in full or in part, the amount you owe on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make. If you prepay in full, we will refund to you part of the credit insurance premium you paid based on a formula approved by law.

12. WAIVER: If we waive any right or default, that waiver is not binding on us if we later choose to exercise that or any other right or a similar Default occurs. Our exercise of one or more rights will not cause us to lose our other rights. Without notice to you and without in any way affecting your obligations to us on the Contract, you agree that we may (i) add additional Buyers, (ii) extend the time for payment of any sums due on this Contract, or (iii) add or release any Goods securing repayment of this Contract. We and Assignee waive the right to treat any property as security for the repayment of this Contract except for the Goods and other security specifically mentioned in this Contract.

13. RIGHT OF SET-OFF: The law gives us a right of set-off in any of your property in our possession. When we assign (transfer) our rights in this Contract, the Assignee will obtain the right of set-off. If you default, the Assignee may exercise the right of set-off and apply any of your property in the Assignee's possession, including deposit accounts, to sums you owe on this Contract.

14. ASSIGNMENT: You may not assign (transfer) your rights under the Contract but we may. Upon receiving notice of our sale of the Contract to the "Assignee," you agree that the Assignee shall have all of our rights and remedies as the owner of the Contract, and you agree to make all payments thereafter to the Assignee. Any Assignee may later sell the Contract to another Assignee who shall then be the owner of this Contract.

15. MISCELLANEOUS: If any part of this Contract is determined to be invalid, the rest shall remain in effect. The laws of New Jersey shall apply to this Contract, except as federal laws apply. This Contract shall benefit us and our successors and assigns, and shall bind you, your heirs and your personal representatives.

**IF THIS CONTRACT INVOLVES THE SALE OF A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NO WARRANTY: UNLESS WE PROVIDE TO YOU A SEPARATE WRITTEN WARRANTY, SUCH AS ON THE WINDOW FORM FOR THIS VEHICLE, WE MAKE NO WARRANTY TO YOU CONCERNING THE GOODS, OR THAT THEY ARE MERCHANTABLE OR FIT FOR ANY PARTICULAR PURPOSE. IF THE GOODS ARE NEW OR STILL UNDER THE MANUFACTURER'S WARRANTY, WE WILL PROVIDE YOU WITH THE MANUFACTURER'S WRITTEN MATERIALS, WHICH BIND ONLY THE MANUFACTURER.**

ASSIGNMENT

To induce you, the "Assignee" named on the front to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that: the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the New Jersey Uniform Commercial Code (N.J.S.A. 12A:2-101 et seq.); our title to the Contract and the Goods (called "Vehicle" in this Assignment) covered thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age, had capacity to contract and are the person(s) he, she or they purport to be; the description of the Vehicle and extra equipment is complete and correct, the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks or other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties, statements and signatures therein are true; there is owing thereon the Amount Financed plus earned Finance Charge as set forth therein; we are duly licensed under applicable laws of New Jersey and have duly complied with all requirements of the Retail Installment Sales Act of 1960, as amended, with respect to the transaction, and with the federal Truth-in-Lending and Equal Credit Opportunity Acts and with any other federal or state laws, rules or regulations applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration; the Buyer(s) in the within Contract is personally known to the Seller to be the same identical person(s) whose signature(s) is affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor the amount owing thereon, plus any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth above, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refunds of payments made by Buyer to Assignee.

For value received, Seller, by signing the Assignment on the front side, hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or Seller's name to take such legal or other action which Seller might have taken save for this Assignment. By delivering this Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to complete or correct the identification of the Assignee to reflect the true Assignee who purchased this Contract and/or to sign Seller's name to this Assignment, without recourse, if the Assignment has been delivered without Seller's signature.

IF WITHOUT RECOURSE IS APPLICABLE—Seller's assignment shall, except for the provisions of the Assignment, above, be without recourse.

IF WITH FULL RECOURSE IS APPLICABLE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, plus any then earned Finance Charge.

IF WITH REPURCHASE IS APPLICABLE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, plus any then earned Finance Charge.

# CERTIFICATE OF TITLE

COLEMON RICKEY

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE |
|---|---|---|---|---|
| 1 | 1G6KE 57Y15 U1820 40 | Z | 2005 | CAD |

| TYPE OF TITLE | DUPLICATE NO. | GVW/WGT/LGTH | COLOR/MT/HP | DEALER ID | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 8 | GRN | 25039N | 2 | 0 |

| FEE | ISSUE DATE | VIN-REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 40.00 | 10-22-2008 | | 41956 | A |

F-FLOOD S-SALVAGE
P-POLICE T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

OWNER(S)

RICKEY COLEMON
2525 43RD STREET
PENNSAUKEN NJ 08110 2126

NUMBER OF OWNERS 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC #:C6240 65600 12502

I CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN IF ANY AS STATED

CONTROL NUMBER AC765928

SIGNATURE

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER

DATE

LIEN RELEASED BY

SIGNATURE

SECOND RELEASE

TITLE DATE

FIRST LIENHOLDER

DATE 10-22-2008
67507 45951 52220
PNC BANK NA
2730 LIBERTY AVE
PITTSBURGH PA 15222

LIEN RELEASED BY

SIGNATURE

FIRST RELEASE

TITLE DATE

ISM/SS-1 (R11/07)

GD200829600001236

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

[illegible]

VOID IF ALTERED

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK
HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

PNCBANK

CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association does hereby certify as follows:

1. National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.), having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number [REDACTED].

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 6th day of November, 2009.

Janet L. Deringer

Member of The PNC Financial Services Group

One PNC Plaza 249 Fifth Avenue Pittsburgh Pennsylvania 15222 2707

M:\LGL\BOARD\CERT\NATIONAL CITY\NATIONAL CITY BANK.doc